JONATHAN DAVIDSON, pro se
5675 Via Junipero Serra
Riverside, California 92506
Telephone: (858) 531-7578
Telefacsimile: (951) 823-0410
Email address: law.davidson@gmail.com



$C^{\#}$
FILED
AUG 2 5 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **JONATHAN DAVIDSON,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD ENTERPRISE COMPANY, UNITED HEALTHCARE, UNITED HEALTHCARE SERVICES, INC., UNITED HEALTH GROUP INCORPORATED, DR. ANGELIQUE GREEN, DR. PETER STANGEL; DR. EDWARD GREENBERG and DOES 1 through 50 inclusive,**<br><br>       **Defendants** | **COMPLAINT; JURY DEMAND**<br><br>**Case No.: 5:16-cv-01928-EJD** |

Plaintiff Jonathan Davidson, pro se, as and for his Complaint, alleges as follows.

## A. PRELIMINARY STATEMENT

1. Jonathan Davidson is a husband, father and attorney who was diagnosed in 2009 with a disabling neurodegenerative disease, amyotrophic lateral sclerosis (ALS), also known as Lou Gehrig's disease. He is aware and perceptive, mentally sharp and high-functioning, but ALS has caused him to lose the ability to move his muscles, and he must rely continually on breathing and

1

feeding tubes and trained and skilled healthcare professionals to survive. If he does not receive constant respiratory care, he could suffer respiratory failure within minutes and die.

2. Jonathan and the Defendants are fully aware of his medical condition and the threat of immediate, irreparable decline and death if he is deprived of skilled medical care. Defendants are also aware of the severe emotional and mental distress, injury and damage that Jonathan is subject to in connection with his emotional condition and level of care. Although pressure from Jonathan and his family and caregivers has effectively prevented full denial of care by Defendants, their conduct had inflicted on him severe emotional distress and other injury and damage.

3. Medical and healthcare and therapy for Jonathan Davidson ("Davidson" or the "Plaintiff") has been covered under health benefits medical plans for which defendants Hewlett-Packard Company and its affiliate Hewlett-Packard Enterprise Company (collectively and individually, "HP") have served as plan sponsor and plan administrator (any such plan, the "Medical Plan"). Defendants United Healthcare, United Healthcare Services, Inc., affiliates of United Health Group Incorporated (each of the three individually and collectively, "UHC") have acted and served as claims administrators, service providers, administrators and/or trustees of the Medical Plan. Upon information and belief, individual defendants Dr. Angelique Green, Dr. Peter Stangel, Dr. Edward Greenberg and Does 1 through 50 have acted and served as administrators, physicians, agents, principals, employees or independent contractors in regard to health and medical care and therapy of Plaintiff Davidson and have worked with or for other Defendants (HP, UHC and such individuals, each individually a "Defendant" and collectively the "Defendants"). Such individual Defendants have knowingly participated with Defendants HP and UHC in connection with the acts, omissions, conduct and matters alleged in this Complaint.

2

4. Despite Jonathan Davidson's disability and critical medical needs, Defendants tried to deny that he requires any skilled medical care and have acted as though he does not have ALS disease. They attempted to impose a determination that his skilled care in a rehabilitation center should be terminated and that he needed only "custodial care" at home, which would not be covered and paid for under the Medical Plan. Jonathan has suffered irreversible damage due to the improper conduct of Defendants and the doctors and others who participated in attempting to wrongfully deny him care. The shocking and indefensible nature of the decisions and actions by Defendants is starkly obvious in light of reports from other physicians who have cared for Jonathan Davidson since his diagnosis with ALS in 2009. Upon information and belief, Defendants must have been aware of the wrongful nature of their determinations and actions in regard to Davidson and the harm that would result.

5. Plaintiff Davidson has properly appealed the denials of care and has exhausted his internal administrative remedies in regard to the Defendants and the Medical Plan. In response to continued appeals and challenges made by the Jonathan Davidson and his wife Corinna, certain benefits and skilled care for Jonathan and his ALS disabilities have been provided, but the denial of care and manipulation of care determinations Defendants and their failure to follow procedures required for full and fair review of their wrongful denials of care have continued.

## B. THE PARTIES

6. Davidson is a resident of Riverside, California.

7. Defendant Hewlett-Packard Company is a corporation with a principal place of business in Palo Alto, California.

8. Defendant Hewlett-Packard Enterprise Company is a corporation with a principal place of business in Palo Alto, California. Upon information and belief, Hewlett-Packard Company and Hewlett-Packard Enterprise Company are affiliates and/or predecessors and/or successors to each other, following a recent corporate reorganization.

9. Defendant United Healthcare is a corporation with operations and a place of business in Santa Clara County, California, and with operations and a principal place of business in Utah.

10. Defendant United Healthcare Services, Inc. is a corporation with operations and a place of business in Santa Clara County and operations and a principal place of business in Salt Lake City, Utah.

11. Upon information and belief, Defendant United Health Group Incorporated has a place of business and operations in Santa Clara County, California, and is a parent and/or affiliate of United Healthcare and United Healthcare Services, Inc.

12. Upon information and belief in regard to individual Defendants, Plaintiff alleges:

(a) Angelique Green, MD, is a physician and Medical Director who works with or for UHC and other Defendants, with an office in California;

(b) Peter Stangel, MD, is a physician who works with or for UHC and other Defendants and has an office and residence in New York, New York;

(c) Edward Greenberg, MD, is a physician who works with or for UHC and other Defendants and has an office and residence in Miami, Florida.

13. Plaintiff does not know the true names or capacities, whether individual, corporate, business entity, associate or otherwise, of defendant Does 1 through 50, inclusive, and therefore

designates and names those defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the defendant Does when the same become known to Plaintiff. Plaintiff is informed and believes and, therefore, alleges that each of such defendants so designated herein as Doe is legally responsible in some manner for the events, occurrences and matters referred to in this Complaint and that each proximately caused injuries and damages to Plaintiff.

### C. JURISDICTION, VENUE AND INTRA-DISTRICT ASSIGNMENT

14. The Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 and the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001 et seq. ("ERISA"), including Section 1132 thereof. The Court also has supplemental subject matter jurisdiction pursuant to 28 U.S.C. Section 1367 over State law claims contained herein.

15. This Court has personal jurisdiction over all Defendants because Plaintiff's claims arise from each of Defendant's transacting business in the State of California, violating legal obligations and causing injury by an act or omission in the State of California, and/or violating legal obligations or causing injury in the State of California by an act or omission outside of the State of California.

16. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 in that a substantial part of the events, acts or omissions giving rise to the claims of Plaintiff occurred in this district.

17. This case is properly assigned to the San Jose Division of the Northern District because the claims arise in Santa Clara County, where HP and other Defendants have offices and/or conducted business and the acts or omissions alleged in this Complaint.

## D. CLAIMS

18. Due to the pressure of Plaintiff and his wife and care providers, Defendants have effectively continued skilled care for him without full denial of benefits. However, the emotional distress and other injury and harm that Defendants have inflicted on him is severe and irreparable. In deciding that Jonathan Davidson could be terminated from skilled care in a rehabilitation center, Defendants acted improperly, knowing that his medical condition and viability would decline precipitously, directly threatening his life. UHC Medical Director Angelique Green, MD, on February 12, 2015 seemed to ignore his ALS and asserted in regard to Jonathan, "You had a nerve problem. You had breathing trouble."

19. When the Davidsons appealed that ejection of Jonathan from skilled care, UHC relied on Doctor Peter Stangel to review and uphold Dr. Green's determination. Dr. Stangel declared in a February 26 decision, "You have no medical needs requiring inpatient skilled care." His assertion was made in spite of a February 23 letter from one of Jonathan's physicians, which stated: "Mr. Davidson requires continued care in a skilled nursing facility."

20. The February 12 and February 26 denials of care by Doctors Green and Stangel were reversed by UHC on appeal on March 5. However, in yet another UHC denial of care on April 10, 2015, Doctor Stangel revived his discredited position in order to uphold an April 2 denial of benefits by Dr. Green. Dr. Stangel stated about Jonathan in that April 10 adverse determination: "We do not see that you have skilled medical needs."

21. The shocking and indefensible nature of these decisions by Defendants is starkly obvious in light of reports from other physicians who have cared for Jonathan Davidson since his diagnosis with ALS in 2009. Letters from three of Jonathan's doctors dated April 29, May 1 and

May 28, 2015 gave evidence of his condition and need for skilled medical care, contrary to the denials of care and affirmations on appeal by UHC on April 10, 2015. The notice of the affirmation of the denial of care in the April 10 UHC letter was received by Plaintiff no earlier than April 13, 2015.

22. In an April 29 letter from Dr. Laura Nist, a physician who has been involved with Jonathan's care since his ALS diagnosis in 2009, she describes his medical needs and the "complications" that would arise "if Jonathan were to receive care at home with non skilled providers." Dr. Nist, who is a neurologist and Director of an ALS clinic at a university hospital in California, reports in her April 29 letter:

> "The needs of an ALS patient with chronic neuromuscular respiratory failure and severe, generalized weakness include tracheostomy and ventilatory care, skin care and prevention of skin breakdown and ulcer formation, adequate GI [gastrointestinal] function and prevention of constipation and fecal impaction balanced with adequate nutritional intake, effective removal of urine without prolonged moisture on the skin and skin breakdown, and challenges with communication....Jonathan needs skilled medical care. The lack of skilled medical care puts Jonathan at risk for infection, aspiration pneumonia, skin breakdown, lack of response to potential cardiac and pulmonary events (as have occurred in the past), medication errors, and inadequate recognition of decline in health and rapid responsiveness to decline."

23. In their denials of Jonathan Davidson's critical needs, UnitedHealthcare and the its doctors and others working with or for UHC and HP tried to send Jonathan Davidson home for "custodial care" that does "not require special skills or training," effectively depriving him of the ongoing medical attention from physicians and other skilled and trained medical personnel that he needs to survive. Such "custodial care" would no doubt have saved money for the health benefits plan administered by UHC and HP, because Defendants improperly asserted that custodial care was not covered by that plan.

24. Jonathan Davidson and his wife Corinna and five-year-old son Jake have been terribly damaged by the attempted denial of care by Defendants under the Medical Plan that covers the Davidsons. With round-the-clock efforts to handle and coordinate care for Jonathan, parenting for Jake and Corinna's financial support of her family as an employee at Hewlett-Packard, the Davidsons have fought to find means of balance and survival in their life in the years since Jonathan's diagnosis. Their chance for care and continuation of a family life together was shattered by the improper denial of medical care coverage by Defendants.

25. The conduct of Defendants UHC, HP and the Defendant doctors has been wrongful in their adverse benefits determinations and in their failure to follow proper procedures for full and fair review of those denials. The initial actions that were appealed by Jonathan Davidson as he exhausted his administrative remedies under the Medical Plan were improper, and subsequent actions by UHC and Defendants show a failure to follow proper procedures for full and fair review of those care denials.

26. UHC's February 12 and February 26, 2015 decisions to terminate and eject Jonathan Davidson from skilled care at the Reche Canyon Rehabilitation Center in California cannot be defended. His ALS disability and constant medical needs obviously justify "skilled care," which is described by UHC, in its adverse decisions, as services "delivered or supervised by licensed technical or professional medical personnel in order to obtain the specified medical outcome and provide for the safety of the patient." In contrast, the "custodial care" at home that UHC tried to force Jonathan into is described by UHC as "services that do not require special skills or training" and that "do not require administration by trained medical personnel in order to be delivered safely and effectively."

27. In response to an appeal filed by the Davidsons, the adverse initial determination and the "first level" appeal decision by UHC and its doctors on February 12 and 26 were both overturned by a "second level" UHC appeal decision on March 5, 2015. That March 5 determination approving skilled medical care stated that it was valid through April 19, 2015.

28. In spite of that March 5 decision, UHC on April 2 issued an adverse determination in regard to another skilled care facility, Bridge 2 Life, to which the Davidsons wished to move Jonathan for improved care. The April 2 decision by UHC again attempted to call into question whether Jonathan would be covered for treatment with "Inpatient Services; Skilled Nursing Facility."

29. In response to an urgent appeal by the Davidsons on April 7 challenging the April 2 denial, UHC issued an adverse determination on April 9 that directly contradicted the long clinical record of Jonathan Davidson and also violated the March 5 reversal of UHC's February 12 and 26 denials of skilled care. Entirely overlooking the history of Jonathan Davidson's ALS disability and the March 5 determination, the April 9 "first level" appeal decision stated: "We did not receive any clinical information to show that you continue to need skilled nursing care."

30. In a "second level" appeal decision on April 10 affirming the first level denial issued the day before, Dr. Peter Stangel presented again his indefensible position that Jonathan did not have "skilled medical needs." Dr. Stangel added that "residential treatment is not a covered benefit, based on your health plan policy." UHC's April 10 denial went on to state that "custodial care" for Jonathan would not be covered by the Davidsons' benefit plan.

31. In addition to reviving the improper denial of "skilled care" for Jonathan that was overturned on March 5, the April 2, April 9 and April 10, 2015 adverse determinations by UHC incorrectly maintained that the Bridge 2 Life facility, where the Davidsons wished to move

9

Jonathan for improved care, was a "congregate living facility" that was not a "covered benefit" under the Davidsons' health benefit plan. In fact, as shown in the attached Appeal Submission and Challenge brief, by March 27 Bridge 2 Life had submitted all documentation requested by UHC for approval of Bridge 2 Life as a "congregate living health facility" and "skilled nursing facility" regulated by the California Department of Public Health, rather than just a "congregate living facility."

32. UHC and its doctors and others failed to follow procedures for a full and fair review of the adverse benefit determinations that denied care and coverage to Jonathan under the Medical Plan covering the Davidsons.

33. The failure to allow full and fair review includes the following: (1) the issuance of adverse decisions denying Jonathan's right to skilled care on April 2, April 9 and April 10, 2015, in contradiction and violation of the prior March 5 UHC appeal decision, which approved skilled care for Jonathan through April 19; (2) decisions by UHC to affirm adverse determinations before the Davidsons had an opportunity to submit information and material appealing the determinations; (3) the immediate issuance by UHC of a "second level" appeal decision on April 10 affirming the "first level" appeal determination made by UHC on April 9, as well as other improper actions and decisions by UHC and its doctors that circumvented the health plan's two-level appeal process and cut off Jonathan Davidson's ability to submit written comments, documents, records and other information relating to his claims for benefits and related appeals; (4) failing to provide full and fair reviews that took into account all comments, documents, records and other information submitted by Jonathan relating to his benefits claims and UHC's adverse determinations; and (5) improperly affording deference to initial adverse determinations

and improperly allowing individuals involved in those adverse decisions to conduct review of the determinations.

34. Instances of such improper deference and conduct of reviews include, for example, the participation by Dr. Angelique Green in an April 2, 2015 adverse determination and the participation by Dr. Peter Stangel and an "Appeals Coordinator" identified as "Laura C" in the related April 10 adverse appeal decision, which revived and reasserted wrongful positions, previously taken by the three of them in UHC's February 12 and February 26 denials of care, that Jonathan Davidson did not have medical needs requiring skilled care.

35. As a consequence of the failure of UHC and its doctors and other parties to follow procedures for full and fair review of adverse benefit determinations, Jonathan Davidson should be deemed to have exhausted his administrative remedies available under the Davidsons' health plan. UHC's April 10 adverse appeal determination acknowledged such exhaustion, stating: "Please be advised that a final appeal with UnitedHealthcare has been completed on the case. There are no further appeal steps available with us."

36. As part of Defendants' failure to follow procedures for full and fair review, they failed to allow the Plaintiff to submit comments, documents, records and information that should have been allowed to be submitted and should have been taken into account if Defendants had followed proper procedures for full and fair review of their wrongful determinations denying coverage and care for Jonathan Davidson. Jonathan has suffered irreversible damage due to the improper conduct of Defendants, including in wrongfully denying him care.

37. At the time of the April 10 determination by UHC regarding Plaintiff's care, UHC had already extended Plaintiff's care until later that month. Under pressure from Plaintiff and his family, care providers and appeals, Defendant HP appears to have caused UHC to allow Plaintiff's skilled care to be continued, without full denial of those benefits. However, Defendants have kept up a week-by-week practice that has resulted in severe anxiety, panic, depression and emotional distress for Plaintiff Jonathan Davidson. In addition, UHC appears to continue to threaten Plaintiff with a determination that his status should be custodial, without skilled care or skilled medical facilities.

38. Defendants have manipulated invoicing, co-payments, notices regarding entitlement to care, misleading correspondence and denial of items of coverage followed by restoring of the coverage when the improper denial was discovered by Plaintiff and his wife and care providers. Among the misleading correspondence and communications that Defendants have sent to Plaintiff and his caregiving wife and other care providers, in August 2015 UHC sent a letter that purported to be an agreement to provide skilled residential care, rather than mere "custodial care" at home without skilled medical personnel. In fact, on later examination of this confusing document, Plaintiff and his spouse realized that the misleading, so-called "agreement" attempted to induce them to respond with agreement that skilled residential care was outside the coverage of the Medical Plan. Plaintiff and his wife declined to acknowledge agreement to the deceptive correspondence and the "agreement" it purported to memorialize.

39. Defendant UHC has also appeared to attempt to procure an admission that Plaintiff was "custodial" and not entitled to skilled care by sending Plaintiff direct payments for medical services provided to Plaintiff by skilled medical providers. Plaintiff has declined to accept, or

has returned, these improper payments, which should have been paid by UHC to the skilled medical personnel and facilities.

40. The continuing and continual efforts by UHC and other Defendants to manipulate the medical treatment and coverage of Plaintiff have unnecessarily caused him severe anxiety, panic and other severe emotional and mental distress.

41. Defendants have intruded on the privacy of Plaintiff and have obtained private information concerning him. The intrusion and gathering of information by Defendants has been accomplished by means that include access to medical, psychological and personal records and, upon information and belief, electronic intrusion in communications and computing and online devices and capabilities of Plaintiff.

42. Defendants have communicated, disseminated and publicly distributed private information and records of Plaintiff to others that are not entitled or permitted to receive such information and records. Defendants have used Plaintiff's information and records for purposes that are not entitled or permitted, which have harmed Plaintiff and which have been intended to benefit Defendants.

43. Defendants are and at all relevant times were aware of the ALS diagnosis, disability and medical condition and treatment needs of Plaintiff, including his need for skilled medical care in a skilled care facility and his susceptibility to severe mental and emotional distress, panic attacks, anxiety attacks and depression, for which he was medicated. Defendants have access to Plaintiff's medical records and were aware, as Plaintiff was, of the danger of imminent harm and death if his medical treatment and skilled care were terminated. Defendants were aware of the

severe mental distress that classification of Plaintiff as "custodial," without the need or right to skilled medical care, would cause to Plaintiff.

44. The HP Defendants appear to have conflicts of interests in connection with the Plaintiff and the Medical Plan. HP is identified in Medical Plan documents as the sponsor and administrator of the Plan. The Medical Plan also discloses that the general assets of HP will be the source of payments required to participants and beneficiaries under the Medical Plan. As a consequence, HP has a conflict in making any determination in regard to granting, denial, continuation or payment of benefits under the Medical Plan.

45. Defendants Green, Stangel, Greenberg and Does 1 through 50 were knowing participants with Defendants HP and UHC in the conduct, acts and omissions of HP and UHC.

46. To appeal and seek to reverse, remedy and redress the improper determinations, actions, omissions, denial of care and failure to Defendants to follow proper procedures, allow full and fair review and grant appeals that should have been granted, Plaintiff Davidson filed the following two documents annexed hereto as Exhibit A-1 and Exhibit A-2: (i) the Summary Appeal Submission and Challenge (the "Summary Submission") and (ii) the Appeal of United Healthcare Decision and Challenge to United Healthcare Case (the "Appeal and Challenge). The Plaintiff hereby alleges and incorporates the Summary Submission and the Appeal and Challenge and all statements, information, allegations and matters referred to therein as if incorporated in this Complaint in their entirety.

## COUNT I

### (Enforcement of Rights under ERISA)

47. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

48. The determinations, actions and omissions by Defendants in regard to Plaintiff and his rights and coverage under the Medical Plan and applicable law were incorrect, arbitrary, capricious and knowingly false, both in the initial determinations, actions and omissions of Defendants and in the failure to grant the relief requested in Plaintiff's appeals. The wrongful determinations, actions and omissions of Defendants include the classification of Plaintiff as warranting only "custodial care," without skilled medical care in a skilled medical facility, the ejection of Plaintiff from skilled care and facilities and the rejection of his appeals.

49. Defendants were subject to conflicts of interest in their determinations, actions and omissions in regard to Plaintiff, including a conflict of interest arising in connection with HP bearing responsibility for payment of claims and coverage from its general assets while HP was also serving as administrator, sponsor and/or fiduciary in connection with the Medical Plan and in connection with services procured from other Defendants.

50. Defendants engaged in and allowed to occur or exist gross procedural irregularities in their treatment of Plaintiff, their determinations regarding his rights and coverage under the Medical Plan and ERISA and his appeals.

51. In their actions, the Defendants failed to comply with the Medical Plan and ERISA and the regulations promulgated thereunder and with applicable law.

52. The Court should review de novo and reverse the actions, determinations and omissions of Defendants, including their classification of Plaintiff and "custodial," without need for skilled medical care in a skilled care facility. The Court should grant the relief demand in

15

Plaintiff's administrative appeals. The Court should reverse the determination by Defendants that Plaintiff should treated as warranting, and should be covered only by, custodial care.

53. The Court should grant Plaintiff de novo review of the actions, determinations and omissions of Defendants, including their classification of Plaintiff as "custodial," without need for skilled medical care in a skilled medical facility and their failure to grant his administrative appeals.

54. The Court should grant Plaintiff enforcement of his rights under the Medical Plan, pursuant to ERISA, 28 U.S.C. Section 1132(a)(1)(B), including de novo review and reversal of Defendants' actions, determinations and omissions in regard to Plaintiff. The Court should grant Plaintiff injunctive relief pursuant to ERISA, 28 U.S.C. Section 1132(a)(3) to enjoin Defendants' violations of the Medical Plan and ERISA and should grant other appropriate equitable relief, pursuant to 28 U.S.C. Section 1132(a)(3), (i) to redress Defendants' violations and (ii) to enforce the provisions and terms of ERISA and the Medical Plan.

## COUNT II

### (Breach of Fiduciary Duty under ERISA by Defendants HP and UHC)

55. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

56. The determinations, actions and omissions by Defendants HP and UHC in regard to Plaintiff and his rights and coverage under the Medical Plan and applicable law were incorrect, arbitrary, capricious and knowingly false, both in the initial determinations, actions and omissions of Defendants HP and UHC and in the failure to grant the relief requested in Plaintiff's appeals. The wrongful determinations, actions and omissions of Defendants HP and

16

UHC include the classification of Plaintiff as warranting only "custodial care," without skilled medical care in a skilled medical facility, the ejection of Plaintiff from skilled care and facilities and the rejection of his appeals. The conduct, determinations, actions and omissions of HP and UHC breached their fiduciary duties in violation of ERISA, Section 28 U.S.C. Section 1109.

57. The Court should reverse the actions, determinations and omissions of Defendants, including their classification of Plaintiff and "custodial," without need for skilled medical care in a skilled care facility and should grant the relief demand in Plaintiff's administrative appeals. The Court should reverse the determination by Defendants that Plaintiff should treated as warranting, and should be covered only by, custodial care.

58. The Court should grant Plaintiff appropriate relief under ERISA, 28 U.S.C. Section 1132(a)(2) for the fiduciary breaches of Defendants HP and UHC, including removal of UHC as named or de facto fiduciary under the Medical Plan.

## COUNT III

### (Failure to Disclose and Provide Information and Records)

59. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

60. Defendants have failed to provide information, documents and records properly requested by Plaintiff pursuant to the Medical Plan, ERISA, the regulations promulgated thereunder and applicable law.

61. Defendants have made misrepresentations to Plaintiff about information, documents and records in connection with the Medical Plan and his rights under ERISA, including the

17

information, documents and records he has requested from Defendants. Such misrepresentations have included misrepresentations regarding rights and procedures under the Medical Plan and Plaintiff's status as warranting only "custodial care," without skilled medical care or care in a skilled medical facility.

63. Pursuant to ERISA, 28 U.S.C. Sections 1132(a)(1)(B) and 1132(a)(3), the Court should order and direct Defendants to produce and deliver to Plaintiff all the information, documents and records requested by Plaintiff from any Defendant and should enjoin Defendants from any misrepresentation and other violations in connection with such information, documents, records and in connection with the Medical Plan, ERISA and Plaintiff's rights thereunder.

## COUNT IV

### (Failure to Comply with Medical Plan and Applicable Procedures)

64. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

65. In their determinations, actions and omissions in regard to Plaintiff and his rights and appeals, Defendants failed to follow the comply with the Medical Plan and plan documents and requirements and with ERISA and the regulations promulgated thereunder, in violation of ERISA, 28 U.S.C. Section 1104.

66. In their determinations, actions and omissions in regard to Plaintiff and his rights and appeals, Defendants failed to follow the procedures and requirements provided in ERISA, including failure to provide full and fair review of Defendants' determinations and actions and Plaintiff's appeals and failure to comply with ERISA, 28 U.S.C. Section 1133.

18

67. In their response to Plaintiff's appeals, Defendants failed to follow procedures for a full and fair review of the determinations, actions and omissions of Defendants, as required by ERISA, the regulations promulgated thereunder and applicable law, including the classification of Plaintiff as needing and warranting only "custodial care," without skilled medical and nursing care and facilities for Plaintiff. Defendants failed to accept submissions of information, comments, records, documents and information from Plaintiffs that should have been accepted and considered by Defendants.

68. The Court should issue injunctive relief ordering Defendants to reverse and correct their failure to comply with the Medical Plan and follow proper procedures and provide full and fair review and should direct Defendants to accept and consider submissions by Plaintiff and include in Defendants' determinations, decisions and actions proper consideration of such submissions.

69. The Court should grant Plaintiff enforcement of his rights under the Medical Plan, pursuant to ERISA, 28 U.S.C. Section 1132(a)(1)(B), including de novo review and reversal of Defendants' actions, determinations and omissions in regard to Plaintiff. The Court should grant Plaintiff injunctive relief pursuant to ERISA, 28 U.S.C. Section 1132(a)(3) to enjoin Defendants' violations of the Medical Plan and ERISA and should grant other appropriate equitable relief, pursuant to 28 U.S.C. Section 1132(a)(3), (i) to redress Defendants' violations and (ii) to enforce the provisions and terms of ERISA and the Medical Plan.

## COUNT V

### (Other Relief Under ERISA Section 1132(a)(3(B))

70. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

71. Defendants have violated their duties and obligations in regard to Plaintiff under the Medical Plan, ERISA, the regulations promulgated thereunder and applicable law.

72. Plaintiff has been irremediably harmed and damaged by the wrongful acts of Defendants and their violations of the Medical Plan, ERISA, the regulations promulgated thereunder and applicable law.

73. The Court should grant Plaintiff injunctive relief pursuant to ERISA, 28 U.S.C. Section 1132(a)(3) to enjoin Defendants' violations of the Medical Plan and ERISA and should grant other appropriate equitable relief, pursuant to 28 U.S.C. Section 1132(a)(3), (i) to redress Defendants' violations and (ii) to enforce the provisions and terms of ERISA and the Medical Plan.

## COUNT VI

### (Intentional Infliction of Emotional Distress)

74. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

75. Preemption under ERISA does not preclude the filing and allowing of a tort action such as intentional infliction of emotional distress.

76. Defendants are and at all relevant times were aware of the ALS diagnosis, disability and medical condition and treatment needs of Plaintiff, including his need for skilled medical care in a skilled care facility and his susceptibility to severe mental and emotional distress, panic

attacks, anxiety attacks and depression, for which he was medicated. Defendants have access to Plaintiff's medical records and were aware, as Plaintiff was, of the danger of imminent harm and death if his medical treatment and skilled care were terminated. Defendants were aware of the severe mental distress that classification of Plaintiff as "custodial," without the need or right to skilled medical care, would cause to Plaintiff.

77. Alternatively, Defendants acted with reckless disregard as to whether their actions and omissions would cause Plaintiff severe emotional and mental distress.

78. The actions and omissions of Defendants in regard to Plaintiff were extreme and outrageous.

79. As a direct and proximate result of the extreme and outrageous acts and omissions of Defendants, Plaintiff has suffered severe mental and emotional distress, including panic attacks, anxiety and depression. As a direct and proximate result of the extreme and outrageous acts and omissions of Defendants, Plaintiff has been injured and damaged in an amount to be determined according to proof at trial.

80. The actions and omissions of Defendants in regard to Plaintiff were malicious, intentional, fraudulent and oppressive. Defendant acted with malice or gross negligence.

81. Plaintiff is entitled to exemplary and punitive damages.

82. Plaintiff is entitled to injunctive and equitable relief to protect and relieve him from the conduct of Defendants.

## COUNT VII

### (Fraud and Misrepresentation)

21

83. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

84. Defendants made representations to Plaintiff and his care providers that Defendants knew to be false, or that Defendants had no reasonable ground to believe when they made the representations. The misrepresentations by Defendants included: (a) that Plaintiff warranted only "custodial care," without skilled medical care or skilled medical care facilities; (b) that Defendant had an agreement with Plaintiff regarding the nature of his care; and (c) that invoices and amounts were payable, and should be admitted to be payable, by Plaintiff in light of his "custodial" status without need for skilled care.

85. Defendants representations were not true when made. Defendants knew that their representations were false when they made them, or that they made the representations recklessly and without regard to their truth.

86. Defendants intended that Plaintiff and his care providers would rely on the Defendants' representations, and Plaintiff and his care providers did so reasonably rely on the misrepresentations.

87. Plaintiff has been damaged in an amount to be proven at trial.

88. Defendants' conduct was despicable and was committed maliciously, fraudulently and oppressively with the wrongful intention of injuring and harming Plaintiff and conscious disregard for his rights and condition. Defendants subjected Plaintiff to cruel and unjust hardship, and did so through intentional misrepresentations, deceit and concealment of material facts. Defendants intended to deprive Plaintiff of property and/or legal rights, all to the detriment of Plaintiff and to the financial benefit of Defendants. Plaintiff is entitled to recover

exemplary and punitive damages from Defendant, in an amount according to proof, in order to punish and make an example of Defendants and to deter such conduct in the future.

89. The Court should grant to Plaintiff compensatory damages, punitive and exemplary damages and equitable and injunctive relief.

## COUNT VIII

### (Invasion and Violation of Privacy)

90. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

91. Defendants have intruded on the privacy of Plaintiff and have obtained private information concerning him. The intrusion and gathering of information by Defendants has been accomplished by means that include access to medical, psychological and personal records and, upon information and belief, electronic intrusion in communications and computing and online devices and capabilities of Plaintiff.

92. Defendants have communicated, disseminated and publicly distributed private information and records of Plaintiff to others that are not entitled or permitted to receive such information and records. Defendants have used Plaintiff's information and records for purposes that are not entitled or permitted, which have harmed Plaintiff and which have been intended to benefit Defendants.

93. The intrusion, privacy violations and communication, publication, dissemination and distribution of private information of Plaintiff by Defendants violates California common law and Article I of the California Constitution.

94. Defendants had duties to preserve to the privacy of Plaintiff's private information and records. Defendants negligently allowed and implemented access and communication of Plaintiff's private information and records to entities not permitted or entitled to receive them.

95. As a consequence of the intrusions, privacy violations and negligence of Defendants, Plaintiff has been injured and damaged in an amount to be proved at trial.

96. The Court should grant injunctive and other equitable relief directing Defendants to cease their intrusions and violations of the privacy of Plaintiff and to cease communicating and disseminating his private information and records to entities not permitted or entitled to receive them.

97. Plaintiff is entitled to damages, punitive and exemplary damages and injunctive and equitable relief.

## COUNT IX

### (Negligence)

98. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

99. Defendants owed Plaintiff a duty of care in regard to his emotional and mental distress, private information and medical condition and treatment.

100. Defendants have violated and failed to perform their duties of care in regard to Plaintiff. He has been harmed as a proximate and foreseeable result of their failures and violations of their duties.

101. Defendants' negligence has resulted to injury and damages to Plaintiff in an amount to be proven at trial.

102. Plaintiff is entitled to damages, punitive and exemplary damages and injunctive and equitable relief.

## COUNT X

### (Bad Faith)

103. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

104. Defendants have acted in bad faith in their determinations, actions and omissions in regard to Plaintiff.

105. The Court should grant equitable relief to Plaintiff to order Defendants to cease their actions, determinations and omissions made in bad faith. The Court should grant all compensation to Plaintiff afforded under applicable law to redress and compensate the bad faith of Defendants.

106. Plaintiff is entitled to damages, punitive and exemplary damages and injunctive and equitable relief.

## PRAYER FOR RELIEF

Plaintiff Jonathan Davidson hereby prays for judgment against Defendants as follows.

1. That the Court reverse the actions, determinations and omissions of Defendants in regard to Plaintiff and his appeals and that the Court should reverse the determination by Defendants that Plaintiff should treated as warranting only custodial care, not skilled or skilled residential care.

2. That the Court grant Plaintiff de novo review of the actions, determinations and omissions of Defendants, including their determination that he warrants only custodial care, without skilled medical care or skilled medical facilities.

3. That the Court issue injunctive relief ordering Defendants to reverse and correct their failure to comply with the Medical Plan and follow proper procedures and provide full and fair review and should direct Defendants to accept and consider submissions by Plaintiff and include in Defendants' determinations, decisions and actions proper consideration of such submissions.

4. That the Court order and direct Defendants to produce and deliver to Plaintiff all the information, documents and records requested by Plaintiff from any Defendant or to which Plaintiff is entitled from any Defendant.

5. That the Court grant equitable relief to Plaintiff to order Defendants to cease their actions, determinations, omissions and fiduciary breaches in violation of the Medical Plan and ERISA, including removal of UHC as a fiduciary under the Medical Plan.

6 That the Court grant to Plaintiff such equitable relief and redress as may be permitted by Section 1132(a)(3)(B) of ERISA in order to provide relief and redress to Plaintiff.

7. That the Court grant the relief and actions requested in the Summary Submission and the Appeal and Challenge.

8. That the Court grant to Plaintiff compensatory damages in an amount to be proven at trial, plus applicable statutory interest.

9. That the Court grant punitive and exemplary damages.

10. That the Court grant injunctive relief.

11. That the Court grant declaratory relief.

12. That the Court grant attorney's fees and costs incurred in this action, to the extent recoverable by law.

13. That the Court grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues and matters triable by jury.

Dated: August 25, 2016

Respectfully submitted,

Jonathan Davidson, pro se, by
Corinna Davidson under Power
of Attorney dated September 30,
2012
5675 Via Junipero Serra
Riverside, California 92506
Telephone: (858) 531-7578
Telefacsimile: (951) 823-0410
Email address:
law.davidson@gmail.com

JONATHAN DAVIDSON, <u>pro se</u>
5675 Via Junipero Serra
Riverside, California 92506
Telephone: (858) 531-7578
Telefacsimile: (951) 823-0410
Email address: law.davidson@gmail.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **JONATHAN DAVIDSON,** | ) | |
| | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 5:16-cv-01928-EJD** |
| v. | ) | |
| | ) | |
| **HEWLETT-PACKARD COMPANY,** | ) | |
| **HEWLETT-PACKARD** | ) | |
| **ENTERPRISE COMPANY, UNITED** | ) | |
| **HEALTHCARE, UNITED** | ) | |
| **HEALTHCARE SERVICES, INC.,** | ) | |
| **UNITED HEALTH GROUP** | ) | |
| **INCORPORATED, DR. ANGELIQUE** | ) | |
| **GREEN, DR. PETER STANGEL;** | ) | |
| **DR. EDWARD GREENBERG and** | ) | |
| **DOES 1 through 50 inclusive,** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

The undersigned hereby certifies and swears under penalties of perjury as follows. The undersigned is a resident of the State of California, over the age of eighteen years and not a party to this action. My business address is 31 North Second Street, Suite 200, San Jose, California 95113. On August 25, 2016, I served the annexed Amended Complaint and Exhibits on the above-named Defendants, Hewlett-Packard Company, Hewlett-Packard Enterprise Company, United Healthcare, United Healthcare Services, Inc., United Health Group Incorporated, Dr.

Angelique Green, Dr. Peter Stangel and Dr. Edward Greenberg, by placing true copies of those documents in the United States mail, postage prepaid, addressed to the attorney for said Defendants at the following address: Littler Mendelson, P.C., 1301 McKinney Street, Suite 1900, Houston, Texas 77010, Attention: Danielle Herring, Esq.

_Stephanie Uy_

Name (print): _Stephanie Uy_